IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARAVIND BHARADWAJ<br><br>Plaintiff<br><br>v.<br><br>NYC GREEN TRANSPORTATION GROUP, LLC and NURIDE TRANSPORTATION GROUP, LLC<br><br>Defendant | CIVIL ACTION NO.: |

# COMPLAINT

Aravind Bharadwaj ("Bharadwaj") brings this action against Defendants NYC Green Transportation Group, LLC ('NYC Green") and NuRide Transportation Group, LLC ("NuRide") (together the "Defendants") and for his Complaint alleges as follows:

## PARTIES

1. Bharadwaj is an individual who resides at 596 Channing Ave, Palo Alto, California 94301.

2. Defendant NYC Green is a limited liability company organized under the laws of the State of New York with its principal place of business located at 33-24 Northern Boulevard, Long Island City, New York 11101.

3. Defendant NuRide is a limited liability company organized under the laws of the State of New York with its principal place of business located at 33-24 Northern Boulevard, Long Island City, New York 11101 and is the managing member of NYC Green.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(2) because the amount at issue exceeds $75,000.00, exclusive of interest and costs, Defendants are citizens of a state, and Bharadwaj is a subject of the Republic of India and a temporary resident alien domiciled in Palo Alto, California.

5. The Court also has personal jurisdiction over the parties because Defendants are New York limited liability companies with their principal places of business located in this district and systematically and continually conduct business here. Accordingly, the Court has both general and specific personal jurisdiction over this case.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, and a substantial portion of the affected interstate trade and commerce described below has been carried out in this district.

## FACTS

7. On March 21, 2018, Bharadwaj entered into a Subscription Agreement with NYC Green pursuant through which he agreed to purchase a limited liability company interest in NYC Green for Five Hundred Thousand Dollars ($500,000.00), subject to acceptance by NuRide, the managing member of NYC Green. That same day, Anthony Parrizzi signed the acceptance of

the Subscription Agreement on behalf of NuRide. A copy of the Subscription Agreement is attached as **Exhibit A**.

8. At all times from the date of its formation in 2014 until the present, NuRide has been the managing member NYC Green as well as the owner of 60% of the limited liability company member interests in NYC Green. *See* New York City Green Transportation EB-5 Project: Comprehensive Business Plan (Updated September 2015) (the "Business Plan") p. 7, attached as **Exhibit B**.

9. The Subscription Agreement states:

> If U.S. Citizenship & Immigration Services ("USCIS") denies an Investor's I-526 petition, if this subscription is rejected, or if the minimum offering is not subscribed for, and in the Manager's sole discretion is unlikely to be subscribed for, then the Investment Amount and the Administrative Fee shall be returned to such Investor without interest or deduction.

(Ex. A - Subscription Agreement p. 1).

10. On March 21, 2018, Bharadwaj also entered into an Operating Agreement with NYC Green pursuant to which he purchased limited liability company interests in NYC Green for Five Hundred Thousand Dollars ($500,000) and became a member NYC Green. A copy of the NYC Green Operating Agreement is attached as **Exhibit C**.

11. On March 20, 2018, NYC Green provided to Bharadwaj an *Amendment to NYC Green Transportation, LLC Offering Documents for Investor: Aravind Bharadwaj* (the "Amendment") which is signed by Anthony Parrizzi as "Principal" of NYC Green. The Amendment provides for return of Bharadwaj's investment if his I-526 petition was denied by stating:

>Return of Funds if 1-526 is denied: if the Investor's 1-526 petition is denied under any circumstances, the LLC shall return the Investor's Investment Amount along with administrative fees of US dollars five hundred and ten thousand ($510,000), with no accrued interest within forty-five (45) days of receipt of the Investor's written request therefore, and the Investor shall be redeemed from status as a member of the LLC.

A copy of the Amendment is attached as **Exhibit D**.

12.   By letter dated March 20, 2018 from Parrizzi to Bharadwaj, NYC Green reduced Bharadwaj's $50,000 subscription administrative fee to $10,000. A copy of the March 20, 2018 letter from Parrizzi to Bharadwaj is attached as **Exhibit E.**

13.   With the Subscription Agreement, Operating Agreement and Amendment, Bharadwaj was provided a copy of the *Confidential Private Offering Memorandum 80 Limited Liability Company Interests of NYC Green Transportation Group, LLC* (the "Offering Memorandum"), which states that the NYC Green is a Direct EB-5 project that will "…develop a fleet of vehicles, to be operated as regulated Boro Handicap Access Green Taxis and Black Car Livery & Luxury Cabs and develop their existing technology (the "Project") in New York City". A copy of the Offering Memorandum is attached as **Exhibit F**.

14.   Bharadwaj invested in NYC Green for the purpose of participating in the EB-5 Immigrant Investor Program ("EB-5 Program"), under which investors (and their spouses and unmarried children under 21) are eligible to apply to the U.S. Citizenship and Immigration Service ("USCIS") for permanent residence (*i.e.* a Green Card) if they make the necessary investment in a commercial enterprise in the United States that will create or preserve 10 permanent full-time jobs for qualified U.S. workers. The Offering Memorandum identified NYC Green as the new commercial enterprise (the "NCE") and the job creating enterprise (the "JCE"), which would meet the job creation criteria required by the EB-5 Program. (Ex. F - Offering

{00403514.DOCX}
<u>Complaint</u> – Page 4

Memorandum p. 15). In that regard the Offering Memorandum states that "[t]he job creation will consist of direct employees and who will receive wages directly from the NCE." (*Id.*).

15. EB-5 investors apply for permanent residency by filing a form I-526 with USCIS, usually with the assistance of an attorney. Bharadwaj was represented by the law firm Mona Shah & Associates ("Shah") in connection with his I-526 petition. Shah was also retained by NuRide "to conduct the EB-5 legal compliance". (Ex. F - Offering Memorandum p. 33).

16. Each EB-5 investor's, including Bharadwaj's, $500,000 investment was deposited into an escrow account until the escrow agent received written notice that the I-526 application for that investor had been filed with USCIS. Upon receipt of such notice, the escrow agent disbursed from the applicant's investment $450,000 to NYC Green and $50,000.00 to a holdback account (the "Subscription Holdback Account"). (Ex. A – Subscription Agreement p. 3).

17. On March 26, 2018, Bharadwaj filed an I-526 application, and upon information and belief the escrow agent disbursed from his investment $450,000 to NYC Green and $50,000.00 to the Subscription Holdback Account.

18. On January 29, 2020, USCIS issued to Bharadwaj a Request for Evidence (the "RFE") seeking additional support for his I-526 petition, including a request for additional evidentiary support NYC Green's claims that were made to satisfy EB-5 Program criteria, including claims relating to job creation, that petitioners' capital that was put at risk through investment in the NYC Green, relating to income projections and related to the source of petitioners' invested capital. A copy of the January 29, 2020 Request for Evidence is attached as **Exhibit G.**

19. On May 7, 2020, USCIS denied Bharadwaj's I-526 petition for failure to show that the full amount of Bharadwaj's investment was made available to the business(es) most closely responsible for creating the employment upon which the petition was based, that his investment capital was derived from lawful sources and that the requisite job creation and business plan was credible. A copy of the Notice of Decision (the "Notice of Decision") denying Bharadwaj's I-526 petition is attached as **Exhibit H.**

20. After the denial of his petition, by email dated May 8, 2020 Bharadwaj requested return of his investment in NYC Green and the administrative fees which together total $510,000. On May 12, 2020 via email from its general counsel, NYC Green said that it would return from its hold back account $50,000 of Bharadwaj's investment and the $10,000 administrative fee. Otherwise, it refused to refund the remaining amounts on the basis that 17 other NYC Green EB-5 program participants received I-526 petition denials and the COVID-19 pandemic has caused economic uncertainty.

21. On May 20, 2020, Bharadwaj sent a letter to NYC Green reiterating his request for the return of his investment and administrative fee payment. NYC Green responded by email dated June 23, 2020, in which it continued to refuse to refund the investment, made no mention of when or whether Bharadwaj could expect payment of the $60,000.00 that it had promised to return, and instead offered to file a motion to reconsider the denial of his I-526 petition.

22. On June 24, 2020, Bharadwaj, through his counsel, demanded return of his entire investment in NYC Green, including administrative fees, together totaling $510,000.

23. NYC Green continues to refuse to return Bharadwaj's investment even though its own profit and loss report showed net income of $4,714,360.21 from its total revenue of $12,054,652.21.

24. According to the Offering Memorandum, as a direct EB-5 project, Bharadwaj's investment in NYC Green was made directly into a new commercial enterprise ("NCE") and a job creating entity ("JCE"), which would generate at least ten (10) EB-5 program eligible jobs. (Ex. F - Offering Memorandum p. 15).

25. With respect to the business of NYC Green, the Offering Memorandum states:

> This Project is a multi-phase development project…The Business will operate an in-house fleet of 825 vehicles, under a direct employment model. The Business will operate 24 hours, 365 days a year, in all five Boroughs of New York City: Manhattan, Queens, Brooklyn, Bronx and Staten Island…The Business would employ over 948 individuals on a permanent basis in several job categories (detailed within) to support the entire operations. The project has developed a special Veterans' Hiring Program that provides assistance to job applicants throughout the hiring process. The transportation services will be branded La Puma, which will encompass both the Black Cars, the Green Boro Accessible vehicles and the environmentally friendly vehicles.

(Ex. F - Offering Memorandum p. 15).

26. With respect to the EB-5 framework of NYC Green the Offering Memorandum states:

> The Project and the offering associated with it have been developed under the following USCIS requirements:
>
> - Investors will be required to make an investment of at least $500,000, plus $50,000 in administrative, marketing costs, and other fees;
> - Each investor's contribution to the NCE (New York City Green Transportation, LLC ) will generate at least 10 EB-5 program eligible jobs, as detailed below herein;

- Funds may come from any legal foreign or U.S. source, including income, proceeds from sale of real estate, stock or other assets, gifts, loans, executive pension funds, trusts, and divorce settlements;
- The investment must be received from the person seeking the visa, from clearly identifiable and legal funds; and
- Borrowed investment funds qualify as long as they are not secured by the assets of the target U.S. investment.

Each investor must present for adjudication his or her personal facts and circumstances relevant to his or her I-526[1] application, particularly relating to showing legitimate source of his or her funds. The Project has arranged to work with experienced immigration attorneys to file the EB-5 Visa Petitions on behalf of and at each Subscriber's expense. The Subscriber shall be responsible for all immigration fees as these will not be included as part of the Administrative Fee collected.

(Ex. F - Offering Memorandum p. 15).

27. Upon information and belief, to finance its business, NYC Green raised a total of $51,000,000.00: $40,000,000.00 from EB-5 investors and $11,000,000.00 from non-EB-5 investors. (Ex. F - Offering Memorandum p. 15).

28. According to the Offering Memorandum, NYC Green would use the $40,000,000 raised from EB-5 investors for general operating expenses as well as the following:

> $28,000,000 will be used to purchase cars (880 vehicles at approximately $35,000/per car and 25 sprinters at approximately $75,000/per vehicle); $7,000,000 is to be used to upgrade the office and develop technology and $4,500,000 is to be used for marketing and advertising.

(Ex. F - Offering Memorandum p. 18).

29. The offering memorandum also stated that after five years the income of the company was "projected (conservatively) as approaching $185,021,584". The sources of

---

[1] USCIS Form I-526 is the Immigrant Petition by Alien Investor, which is filed by EB-5 investors requesting permanent resident status. *See* https://www.uscis.gov/i-526

revenue were black car leases, commissions on black car rides, revenue from wheelchair accessible green vehicles, green hybrid eco-friendly cars, black car rides and sprinters, radio dues paid by the leased vehicle drivers and roof top advertisements on green taxis. (Ex. F - Offering Memorandum p. 18).

30. NYC Green is a member of La Puma Transportation Group, LLC ("La Puma") and according to the Offering Memorandum was formed for the purpose of compliance with New York City taxi and limousine regulations and which is also managed by NuRide. (Ex. F - Offering Memorandum p. 32). Describing the activities of La Puma, the Offering Memorandum states:

> Both NYCGT [NYC Green] and LPT [La Puma] entities will be managed by NuRide Transportation Group. The NCE/JCE is managed by its CEO Mr. Anthony G. Parrizzi, a managing member of the NYC Green Transportation Group, LLC and the principal of NuRide Transportation Group, LLC.

(*Id.*).

31. The Offering Memorandum further stated that the Project[2] designed and implemented a software system is called the Iris Command and Control System, known as IRIS to provide dispatch services and monitor efficiencies utilized by La Puma vehicles, as well as provide real-time analyses of, among other things, the performance of drivers and vehicles' costs-per customer per trip. (Ex. F - Offering Memorandum p. 22).

---

[2] The Offering Memorandum defines the Project as: The LLC was organized for purposes of developing a fleet of vehicles, to be operated as regulated Boro Handicap Access Taxis and Black Car Livery & Luxury Cabs and the development of the existing technology project ("Project") located in New York City. (Ex. F – Offering Memorandum p. 9).

{00403514.DOCX }
Complaint – Page 9

32. In its RFE, USCIS sought information concerning NYC Green's claim that investors' funds, including Bharadwaj's, were put at risk and made available to NYC Green, which was designated by NuRide as the NCE and JCE. Instead of providing the requested information, NYC Green responded by alleging that the evidentiary requests had previously been satisfied and that the requests were unduly burdensome and essentially unanswerable. (Ex. H- Notice of Decision p. 9.)

33. Consequently, contrary to the representations in the Offering Memorandum, in the Notice of Decision USCIS found that NYC Green had acquired too few vehicles to support its claim its principal expense was $40 million for the purchase of cars, vans and other vehicles. In this regard, USCIS found that:

> ...Petitioner's record failed to provide sufficient evidence for claims regarding the NCE's expenditures: In one section of the record, Petitioner asserted that the NCE had exhausted US $40 million in funds from the project's first 80 investors, including Petitioner's US $500,000 investment, and had made these funds available to the NCE—the business most closely responsible for job creation—primarily through the purchase of vehicles. This assertion, however, was undermined by record evidence showing the acquisition of too few vehicle assets—the NCE's principal expense—to support either the US $40 million expenditure claim or the claim that the NCE was subsequently forced to oversubscribe the project for an additional US $6 million. To illustrate the point, the RFE noted that during the 18-month period preceding the NCE's request for additional EB-5 investor funds—an 18-month period that included Petitioner's investment—the NCE had received approximately US $18 million in EB-5 capital, but had increased its vehicle fleet by only 37 vehicles during the same period.

(Ex. H - Notice of Decision pp. 5-6).

34.     With respect NYC Green's representation to Bharadwaj that his investment capital would be put at risk in an NCE and a JCE through investment in the NYC Green, USCIS found that:

> Petitioner's record had included evidence indicating that the NCE had subscribed an additional US $6 million in EB-5 investor funds, even as the record failed to demonstrate that previously EB-5 investor funds totaling US $40 million, including Petitioner's, had been made available to the business(es) most closely responsible for job creation. USCIS requested that Petitioner demonstrate with sufficient evidence that Petitioner's EB-5 investment funds had been made available to the NCE for the purpose of job creation, and that Petitioner reconcile the apparent discrepancy between the NCE's significant capital influx from its first 80 investors (US $40 million), including Petitioner, with the lack of documentation demonstrating the expenditure of these funds prior to its request for additional funding.

(Ex. H - Notice of Decision p. 9).

35.     Shah's response to the RFE provided no documents or data to overcome the failure to demonstrate that Bharadwaj's had been put at risk by NYC Green.  Instead, USCIS found that:

> Petitioner's attorney letter also fails to overcome these insufficiencies by alleging error on the part of USCIS, by alleging that the evidentiary request(s) had previously been satisfied, or by alleging that one of the requests in this section was unduly burdensome and essentially unanswerable. As such, Petitioner's RFE response fails to meet Petitioner's burden of proof to demonstrate by a preponderance of evidence that Petitioner's NCE investment capital was made available to the business(es) most closely responsible for job creation.

(*Id.*).

36.     The RFE indicated that Bharadwaj's petition failed to demonstrate with sufficient evidence that the $11 million contributed to the NCE by non-EB-5 investors derive from lawful sources.  The Notice of Decision notes that the RFE response responded to this request in a letter

from Shah, which asserts that "[t]he Service request [sic] a breakdown of an equity investment of $11 million into the NCE from NuRide. The Service is confused as the referenced investment is not an investment into the actual NCE, but rather equity investment by the manager's principals into their company, NuRide, not the NCE." *See* RFE Response Attorney Letter dated February 20, 2020, at 50." (Ex. H - Notice of Decision p. 11).

37. USCIS went on to state that:

> …Petitioner's initial Form I-526 record directly contradict the explanation included in Petitioner's RFE response for Petitioner's failure to demonstrate lawful sources for the NCE's non-EB-5 funding, namely, that non-EB-5 funding was invested into NuRide, rather than the NCE. Petitioner's RFE response fails to provide any sufficient explanation to reconcile its new assertions with those made in Petitioner's April 2018 Business Plan, which explicity (sic) states that the US $11 million investment was made into the NCE (NYCGT), not NuRide.

(*id*.).

38. In connection with the requirement that NYC Green create jobs, USCIS found that:

> In sum, the RFE response fails to provide sufficient evidence to demonstrate that the NCE, rather than NuRide or its wholly owned subsidiaries (NuRide MedTrans and the five licensed bases/fleets), is directly responsible for the job creation claimed by Petitioner in the record. Essential aspects of the NCE's business operations are performed by entities not wholly owned by the NCE. In addition, NuRide's control over the movement of jobs from the NCE to other entities not wholly owned by the NCE (but rather owned by NuRide) undermines Petitioner's claim that the NCE is directly responsible for the job creation cited in the record.

(Ex. H - Notice of Decision p. 26).

39. In support of its conclusion, USCIS found that:

> …the creation of the job that moves between these entities is properly credited to the entity that controls the jobs, including the movement of

>   the jobs between these entities—namely, NuRide Transportation Group, LLC (the NCE's managing member and majority shareholder, as well as the owner of NuRide MedTrans as well as all five licensed fleets/bases).

(Ex. H - Notice of Decision p. 25).

40.     According to USCIS, NYC Green and NuRide failed to fulfill the obligations set forth in the Subscription Agreement, Offering Memorandum and supporting documents with respect to, among other things, the use of investors' funds and the creation of EB—5 qualifying jobs. USCIS's findings show that Bharadwaj and other I-526 petitioners' investments were not used to purchase assets in the amounts represented in the Subscription Agreement, Offering Memorandum and supporting documents. USCIS's findings also show that the jobs created from Bharadwaj and other I-526 petitioners' investments were for and by NuRide and not NYC Green.

41.     NYC Green and NuRide's failures caused USCIS to deny Bharadwaj's I-526 petition. Despite that denial, NYC Green and NuRide have refused to return Bharadwaj's investment and fees as required by their Agreement and the Amendment thereto.

## COUNT I
## BREACH OF CONTRACT
### (as to NYC Green)

1.      Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length.

2.      The Subscription Agreement and the Amendment thereto is an enforceable contract between Bharadwaj and NYC Green, which required the return of Bharadwaj's investment when his I-526 Petition was denied by USCIS.

3.    NYC Green has breached the contract by failing to return Bharadwaj's investment as required by the Subscription Agreement and the Amendment thereto.

4.    Bharadwaj has complied with all conditions and obligations required by the Subscription Agreement and the Amendment thereto and is not in breach of either.

5.    NYC Green's breach of contract has caused damages to Bharadwaj in an amount to be determined by the trier of fact, but in excess of the jurisdictional minimum under the diversity statute.

6.    Bharadwaj requests that the Court enter judgment for its damages against NYC Green, including but not limited to all actual, incidental and consequential damages.

7.

## COUNT II
## BREACH OF FIDUCIARY DUTY
### (as to NuRide)

1.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length.

2.    Under common law and New York Limited Liability Company Law §409, NuRide as managing member of NYC Green owes a fiduciary duty, including the duties of care and loyalty to Bharadwaj.

3.    NuRide breached its fiduciary duty, including the duties of care and loyalty to Bharadwaj by, among other things, failing to use investment proceeds for the purchase of the number of vehicles set forth in the Subscription Agreement, Offering Memorandum and supporting documents including the Business Plan.

4. NuRide also breached its fiduciary duty, including the duties of care and loyalty to Bharadwaj by failing to create EB—5 qualifying jobs for NYC Green and instead creating jobs for the benefit of NuRide.

5. NuRide also breached its fiduciary duty, including the duties of care and loyalty to Bharadwaj by failing to return his investment in NYC Green, of which it is the manager.

6. Nuride's breach of fiduciary duty has caused damages to Bharadwaj in an amount to be determined by the trier of fact, but in excess of the jurisdictional minimum under the diversity statute.

7. Bharadwaj requests that the Court enter judgment for its damages against NuRide, including but not limited to all actual, incidental and consequential damages.

WHEREFORE, Plaintiff prays that judgment be rendered in its favor awarding it:

a. Actual damages in an amount over five hundred ten thousand dollars ($510,000.00) as determined by the trier of fact;

b. Its reasonable and necessary attorneys' fees;

c. Its costs of court;

d. Pre-judgment and post-judgment interest;

e. Such other and further relief as to which Plaintiff may be justly entitled and may be supported by the evidence in this case.

Dated: March, 17, 2021                      Respectfully submitted,

                                            /s/ Jon Michael Dumont
                                            SALMON, RICCHEZZA, SINGER & TURCHI, LLP
                                            Jon Michael Dumont
                                            110 East 59th Street

22nd Floor
New York, NY 10022

Krishna B. Narine (*pro hac vice* pending)
1601 Market St.
Suite 2500
Philadelphia, PA 19103
(215) 279-9706