# EXHIBIT A

**NYC Green Transportation Group, LLC**
**A New York Limited Liability Company**

**Limited Liability Company Interests**

---

**Subscription Agreement**

---

*If you decide not to participate in this offering, please return the Confidential Private Offering Memorandum (together with all amendments, appendices, and supplements thereto), this Subscription Agreement, and any copies of the aforementioned documentation (and any portions thereof) to:*

*NYC Green Transportation Group, LLC*
*33-24 Northern Boulevard,*
*Long Island City, NY 11101*
*Tel: 212.558.9144*
*Fax: 718 395 5144*
*Attn: Anthony G. Parrizzi*
*aparrizzi@parrizzi.com*

**Copy No. _____**

NYC Green Transportation Group, LLC
Subscription Agreement

# NYC Green Transportation Group, LLC
## Subscription Instructions

1. Please complete, date, and sign the Subscription Agreement. By signing, you agree to abide by the Limited Liability Company Agreement of NYC Green Transportation Group, LLC, a New York Limited Liability Company (the "LLC"), and to the terms and conditions of the Subscription Agreement. Please keep a signed copy of all completed and signed documents for your records.

2. Please send the original of your completed, dated and signed Subscription Agreement to:

    NYC Green Transportation Group, LLC
    33-24 Northern Boulevard,
    Long Island City, NY 11101

3. Please pay the subscription amount of US$500,000, by check or wire transfer, to an Escrow Account ("ESCROW ACCOUNT") of the LLC. Additionally, please pay the Administrative Fee of US$50,000 to the same account of the LLC. If you prefer to pay by check, please note the check should be payable to "NYC Green Transportation Group, LLC". If you prefer to pay by wire transfer, wire transfer instructions are included as an attachment to the subscription agreement. PLEASE NOTE THAT ALTHOUGH FUNDS IN THE SPECIAL DESIGNATED ACCOUNTS MAY BEAR INTEREST, YOU WILL NOT RECEIVE NOR BE ENTITLED TO SUCH INTEREST.

**Wire Instructions for the Escrow Account:**

   **Bank Name: Signature Bank**
   **Bank Address: 2 Penn Plaza, Suite 1712, New York, NY 10121**
   **ABA Routing Number: 026013576**
   **Swift Code: SIGNUS33**
   **Account Name: NYC Green Transportation Group, LLC**
   **Account Number: 1502100269**
   **Company Address: 33-24 Northern Boulevard, 5th Floor, Long Island City, NY 11101**

4. If your subscription is accepted, the NuRide Transportation Group, LLC (the "Manager") will countersign your Subscription Agreement to confirm your admission to the LLC and will send you a copy of the countersigned signature page. If your subscription is not accepted all funds in ESCROW ACCOUNT will be refunded to you.

If you have questions, please contact the Manager:

   NuRide Transportation Group, LLC
   33-24 Northern Boulevard,
   Long Island City, NY 11101
   Tel: 212.558.9144
   Fax: 718 395 5144
   Attn: Anthony G. Parrizzi
   Email: aparrizzi@parrizzi.com

CONFIDENTIALITY NOTE: The information contained in this document is legally privileged and confidential information intended only for the addressee(s) named above. If the reader of this document is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of the document is strictly prohibited. If you have received this document in error, please immediately notify us by telephone and return the document to us at the address below via US Mail. We will reimburse any reasonable cost you incur in notifying us and returning the document to us. Thank you.

NYC Green Transportation Group, LLC<br>
Subscription Agreement

NYC Green Transportation Group, LLC
33-24 Northern Boulevard,
Long Island City, NY 11101
Tel: 212.558.9144
Fax: 718 395 5144
Attn: Anthony G. Parrizzi
aparrizzi@parrizzi.com


Re:     NYC Green Transportation Group, LLC – Subscription for Interests


The undersigned (the "Investor") hereby subscribes to purchase Limited Liability Company interests ("Interests"), in the investment amount of five hundred thousand United States dollars (US$500,000) (the "Investment Amount"), in NYC Green Transportation Group, LLC, a New York Limited Liability Company (the "LLC"), Four Hundred and Fifty Thousand ($450,000) or 90% of the Investment Amount will be released to the LLC from Signature Bank or the Escrow Agent (the "Escrow Agent") when the Escrow Agent receives Written Directions from the LLC and the Manager that the I-526 Petition is filed with the US Immigration and Citizenship Services (USCIS). The remaining Fifty Thousand ($50,000) or 10% of the Investment Amount from each investor will remain in a Subscription Holdback Account only until the said investor's I-526 petition is approved. The investors hereby pays an additional fifty thousand United States dollars (US$50,000) as an Administrative Fee (the "Administrative Fee"), all in immediately available funds, to be kept and/or used by the LLC and/or the Manager. The Investor understands that the LLC and/or the Manager may reject this subscription for any reason, in either of their sole and exclusive discretion. If U.S. Citizenship & Immigration Services ("USCIS") denies an Investor's I-526 petition, if this subscription is rejected, or if the minimum offering is not subscribed for, and in the Manager's sole discretion is unlikely to be subscribed for, then the Investment Amount and the Administrative Fee shall be returned to such Investor without interest or deduction.

The Investor acknowledges that the information contained herein is being furnished to determine whether the Investor's Subscription Agreement of which this letter forms a part (this "Subscription Agreement") complies with the requirements of various securities laws, including Section 4(2) of the Securities Act of 1933, as amended (the "Federal Act"), Rule 506 of Regulation D ("Regulation D"), and Rule 902 of Regulation S ("Regulation S"), as well as the requirements of certain applicable state securities laws. The Investor understands that the Manager and the LLC will rely upon the information contained herein for purposes of such determination.

For purposes of such investment in the LLC, the Investor hereby represents, warrants, and agrees as follows:

1.      **General Representations and Warranties**.   The Investor hereby represents and warrants as follows to the LLC and the Manager:

   (a)    *General Information*. The general information regarding the Investor previously submitted, submitted herewith, or to be submitted in the future to the LLC by the

NYC Green Transportation Group, LLC
Subscription Agreement

Investor, including, but not limited to the Investor Eligibility Questionnaire, is and shall be true, complete, and correct.

(b) *Accredited Investor Status.* The Investor has reviewed the definition of "accredited investor" as such term is defined in Rule 501 of Regulation D, and the Investor meets one or more of the requirements to qualify as an "accredited investor".

(c) *Regulation S Compliance.* If the Investor is subscribing to purchase Interests outside the United States, the Investor has delivered to the LLC a copy of an IRS Form W-8 completed by the Investor and the Investor represents and covenants that:

(i) The Investor is not a "U.S. Person," as such term is defined in Regulation S.

(ii) No offer or sale of the Interests was made to the Investor in the United States.

(iii) The Investor is not purchasing Interests for the account or on behalf of any U.S. Person.

(iv) The Investor has not made any pre-arrangement to transfer Interests to a U.S. Person or to return Interests to the United States securities markets (which includes short sales in the United States within the applicable "distribution compliance period", as defined in Regulation S (hereinafter referred to as the "restricted period") to be covered by delivery of Interests) and is not purchasing Interests as part of any plan or scheme to evade the registration requirements of the Federal Act.

(v) All offers and sales of Interests by the Investor in the United States or to U.S. Persons or otherwise whether prior to the expiration or after the expiration of the applicable restricted period shall be made only pursuant to a registration of the Interests under the Federal Act or an exemption from registration. The Investor also understands that the LLC will require from the Investor certain written representations to indicate that the sale of Interests was made in a transaction that complies with the provisions of Regulation S.

(vi) The Investor is not a "distributor," as defined in Regulation S. However, if the Investor should be deemed to be a distributor prior to reselling Interests to a non-U.S. Person during the restricted period, the Investor will send a notice to each new subscriber of Interests that such new subscriber is subject to the restrictions of Regulation S during the restricted period.

4

NYC Green Transportation Group, LLC
Subscription Agreement

 (vii) The Investor is not an officer, director, or "affiliate" (as that term is defined in Rule 405 under the Federal Act) of the Partnership or an "underwriter" or "dealer" (as such terms are defined in the Federal Act), and the purchase of Interests by the Investor is not a transaction (or part of a series of transactions) that is part of any plan or scheme to evade the registration provisions of the Federal Act.

 (viii) The Investor does not have a short position in any Interests and will not have a short position in such securities at any time prior to the expiration of the restricted period.

 (ix) If at any time after the expiration of the restricted period, the Investor wishes to transfer or attempts to transfer Interests to a U.S. Person, the Investor agrees to notify the LLC if at such time it is an "affiliate" of the LLC or is then acting as an "underwriter," "dealer" or "distributor" as to such Interests (as such terms are defined in the Federal Act or the regulations promulgated thereunder, including, but not limited to, Regulation S), or if such transfer is being made as part of a plan or scheme to evade the registration provisions of the Federal Act.

 (x) The Investor acknowledges that the Investor may only be able to resell such Interests pursuant to the provisions of Regulation S and otherwise pursuant to the Federal Act, and that it may not be possible for the Investor to liquidate his or her investment in the Interests. The Investor is prepared, therefore, to hold his or her Interests indefinitely.

(d) *Knowledge and Experience.* The Investor has such knowledge and experience in financial, tax, and business matters that he or she is capable of evaluating the merits and risks of acquisition of the Interests and of making an informed investment decision with respect to such investment.

(e) *Investment Intent.* The Investor is acquiring the Interests for his or her own account, for investment purposes only, and not with a view to the resale or other distribution thereof, in whole or in part. The Investor understands that the Interests have not been registered under federal or state securities laws and that transfer of the Interests in the LLC and withdrawal from the LLC are restricted except as set forth in the LLC's Limited Liability Company Operating Agreement (the "Operating Agreement") and as permitted under applicable laws. The Investor further understands that no federal or state agency or securities or commodities exchange has reviewed the LLC's Confidential Private Offering Memorandum (the "Memorandum"), the Operating Agreement, or the private placement of the Interests, or made any finding or determination as to the fairness of an investment in the LLC.

(f) *Review of Investment.* The Investor has investigated the purchase of Interests in the LLC to the extent he or she has deemed necessary or desirable and has determined that the Interests are a suitable investment for the Investor. In connection therewith, (i) the Investor has carefully reviewed the Operating Agreement, (ii) the Investor has read and is familiar with the Memorandum related to the LLC, (iii) the Investor has consulted with his or her own legal, accounting, tax, investment and other advisers to the extent the Investor has deemed necessary, and (iv) the Investor has been given the opportunity to ask questions of and receive answers from the Manager and the LLC concerning the terms and conditions of the Operating Agreement and the Memorandum and other matters pertaining to an investment in the LLC and to obtain such additional information as he or she deemed desirable to verify the accuracy of such information and to evaluate the merits and risks of the purchase of the Interests.

Notwithstanding the foregoing, Investor acknowledges and agrees that no representation, warranty, or statement made in or in connection with the Memorandum or this offering of Interests, whether by the LLC, the Manager, or any of their respective authorized affiliates, officers, partners, agents, or representatives will be deemed to be a representation, warranty, or statement of or by any other limited partner of the LLC or any other party, and that all statements by the LLC, the Manager, or any of their agents in connection with this offering of Interests, are solely attributable to and made by the LLC, the Manager, or such authorized agent, and no Investor may hold any other party responsible or liable for statements made by the LLC, the Manager, or such authorized agent.

(g) *Ability to Bear Risks.* The Investor is able to bear the economic risks associated with an investment in the LLC. The Investor has adequate means of providing for current needs and personal contingencies, and is aware that an investment in the Interests is highly speculative and subject to substantial risks. The Investor is capable of bearing the high degree of economic risk and burden of this investment, including, but not limited to, the possibility of the complete loss of all contributed capital and the limited transferability of the Interests.

(h) *Private Offer.* The Investor is subscribing to purchase the Interests outside the United States pursuant to Section 1(c) hereof, and the LLC's offer of Interests was privately communicated to the Investor while the Investor was outside of the United States. At no time has the Investor received information concerning such offer of the LLC from any newspaper, magazine, television or radio broadcast, leaflet, or other advertisement, public promotional meeting, or any other form of general advertising or general solicitation.

(i) *Taxpayer Identification.* The Investor shall promptly provide the LLC with a taxpayer identification number at the request of the Manager or the LLC. Under penalty of perjury, the Investor certifies that the taxpayer identification number supplied to the LLC is or will be the Investor's correct taxpayer identification number and that the Investor is not subject to backup withholding under section 3406(a)(1)(c) of the Internal Revenue Code, as amended (the "IRC").

NYC Green Transportation Group, LLC
Subscription Agreement

(j) *Compliance.* Investor acknowledges that the LLC will not accept the investment of funds by any Investor acting, directly or indirectly, in contravention of any applicable anti-money laundering regulations or conventions of the United States or any applicable international jurisdictions, or on behalf of terrorists, terrorist organizations, or narcotics traffickers, including those persons or entities that are included on any relevant lists maintained by the United Nations, North Atlantic Treaty Organization, Financial Action Task Force on Money Laundering of Organization for Economic Cooperation and Development, Office of Foreign Assets Control of the U.S. Department of the Treasury, U.S. Securities and Exchange Commission, U.S. Federal Bureau of Investigation, U.S. Central Intelligence Agency, or U.S. Internal Revenue Service, all as such regulations and conventions may be amended from time to time ("Prohibited Investments"). Investor's subscription for the Interests is not a Prohibited Investment.

(k) *English Language.* THE INVESTOR EITHER READS AND UNDERSTANDS ENGLISH, OR HAS HAD THIS SUBSCRIPTION AGREEMENT, THE OPERATING AGREEMENT, THE MEMORANDUM, AND SUCH OTHER MATERIALS AS THE INVESTOR DEEMS NECESSARY TRANSLATED BY A TRUSTED TRANSLATER INTO A LANGUAGE THAT THE INVESTOR DOES UNDERSTAND.

2. **EB-5 Investors.**

   (a) Independent Counsel. The Investor shall hire an independent counsel for immigration processing and other legal matters. The Investor shall be responsible for payment of legal fees and costs associated therewith. The Manager reserves the right to approve the Investor's choice of counsel to insure that such counsel has experience processing EB-5 visa petitions.

   (b) Filing the Immigration Petition. The Manager shall use reasonable efforts to assist the Investor's counsel with the filing of Investor's I-526 and I-829 petitions, and verifying required direct employment until the removal of the Investor's conditional permanent residency. The Manager shall not charge additional fees to assist with the Investor's permanent residence application. The EB-5 attorneys will charge the attorney fee to assist the investors with the source of funds petitions.

   (c) Visa Denial. If the Investor's I-526 petition is denied, the LLC shall return the Investor's Investment Amount within ninety (90) days of receipt of the Investor's written request therefor, and the Investor shall be redeemed from status as a member of the LLC. In the event any visa petition is denied as described above, the Investor's rights are limited to the return of his or her capital contribution as set forth herein.

3. **Notice of Changes**. The Investor will promptly notify the Manager in writing of any changes in the representations, warranties, and covenants it makes under this Subscription Agreement. Absent any such notice, such representations shall be deemed

7

made by the Investor at the time of each investment by him or her in the LLC, and may be relied upon as complete and correct by the Manager and the LLC.

4. **Additional Information**. The Investor acknowledges that the LLC and the Manager may require other documentation in addition to this Subscription Agreement, and the LLC and the Manager reserve the right to request such documentation prior to deciding whether or not to accept this subscription.

5. **Adoption of Operating Agreement**. Effective upon the acceptance of this Subscription Agreement by the LLC, the Investor hereby accepts, adopts and agrees to be bound by each and every provision contained in the Operating Agreement, and agrees to become an EB-5 Member, as defined therein.

6. **Power of Attorney**. The Investor, by his or her execution hereof, hereby irrevocably makes, constitutes and appoints the Manager as his or her true and lawful agent and attorney-in-fact, with full power of substitution and full power and authority in his or her name, place, and stead to make, execute, sign, acknowledge, swear to, record, and register (i) all certificates and other instruments deemed advisable by the Manager to carry out the provisions of the Operating Agreement and applicable law; (ii) all instruments that the Manager deems appropriate to reflect a change or modification of the Operating Agreement in accordance with the Operating Agreement; (iii) all conveyances and other instruments or papers deemed advisable by the Manager in connection with the LLC, including, without limitation, those to effect the dissolution and termination of the LLC; and (iv) all other instruments or papers which may be required or permitted by law to be filed on behalf of the LLC.

The Investor authorizes such attorney-in-fact to take any further action which such attorney-in-fact shall consider necessary or advisable in connection with any of the foregoing, hereby giving such attorney-in-fact full power and authority to do and perform each and every act or thing whatsoever requisite to be done in and about the foregoing as fully as such Investor might or could do if personally present, and hereby ratifying and confirming all that such attorney-in-fact shall lawfully do or cause to be done by virtue hereof. The forgoing power of attorney is hereby declared to be irrevocable and a power coupled with an interest, and it shall survive the death of the Investor and extend to the Investor's heirs, legal representatives, successors and assigns. The Investor hereby agrees to be bound by any representation made by such representative and attorney-in-fact acting in good faith pursuant to such power of attorney, and hereby waives any and all defenses which may be available to contest, negate, or disaffirm the action of such representative and attorney-in-fact taken in good faith pursuant to such power of attorney.

7. **Indemnification**. The Investor agrees to indemnify and hold harmless the Manager and its affiliates, each other owner of Interests, and the LLC from and against any and all losses, liabilities, claims, damages and expenses (including any expense reasonably incurred in investigating, preparing, or defending against any claim whatsoever) related to any false representation or breach of any warranty or agreement contained herein. If instructions are given by the undersigned by facsimile, the undersigned undertakes to send the original letter of instructions by courier delivery service to the Manager and the

LLC, and agrees to indemnify each of them against any loss of any nature whatsoever arising to any of them as a result of any of them acting upon facsimile instructions. The Manager and the LLC may rely conclusively upon and shall incur no liability in respect of any action taken upon any notice, consent, request, instructions or other instrument believed in good faith to be genuine or to be signed by properly authorized persons.

8.  **Successors of the Investor**. The representations, warranties, covenants, and agreements in this Subscription Agreement shall be binding on the Investor's successors, permitted assigns, heirs, and legal representatives, and shall inure to the benefit of the respective successors and assigns of the Manager and the LLC.

9.  **Privacy**. The Investor agrees that information supplied in this Subscription Agreement and otherwise in connection with his or her subscription for the Interests may be retained by the LLC or the Manager and will be used for the purposes of processing the subscription. Such information may also be used for the purpose of carrying out Investor instructions or responding to any inquiry purported to be given by or behalf of the Investor. Investor authorizes the LLC and the Manager to disclose and transfer such information to each other, including any of their employees, officers, directors, and agents and/or their subsidiaries and/or affiliates, to any third party employed or retained to provide administrative, computer, or other services or facilities, or to any governmental or regulatory authority.

10. **Confidentiality**. The Investor understands that this Subscription Agreement and all other documents delivered to the Investor in connection with this private placement of the Interests are confidential documents prepared solely for the benefit of qualified investors acceptable to the LLC. The Investor agrees that he or she will not reproduce or distribute any of such documents in whole or in part, and if this subscription is rejected, he or she will promptly return the subscription materials and any copies thereof to the LLC.

11. **Counterparts and Delivery**. This Subscription Agreement may be executed in any number of counterparts, each of which shall be considered an original. Delivery of a copy of this Subscription Agreement bearing an original signature by facsimile transmission, by electronic mail in "portable document format" (".pdf") form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, will have the same effect as physical delivery of the paper document bearing the original signature.

12. **Applicable Law and Jurisdiction**. Except to the extent covered by applicable United States federal law, this Subscription Agreement and the rights and obligations of the parties hereto with respect to the subscription shall be interpreted and enforced in accordance with, and governed by, the laws of the State of New York applicable to agreements made and to be performed wholly within that jurisdiction.

13. **Entirety of Agreement; Amendment**. This Subscription Agreement constitutes the entire agreement among the parties hereto with respect to the subject matter hereof, and supersedes all prior agreements (whether oral or written), and may not be amended, modified, terminated or revoked except by written agreement of the parties. In the event

NYC Green Transportation Group, LLC
Subscription Agreement

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement as of __March 21__, 2018.

**SIGNATURE FOR INVESTOR**

_____Aravind_____
(Signature)

Aravind BHARADWAJ
(Print Name)

**ACCEPTANCE**

NuRide Transportation Group, LLC, as Manager of the NYC Green Transportation Group, LLC, hereby accepts the above subscription to acquire Interests.

Dated: __March 21__, 2018

NYC Green Transportation Group, LLC

By: _____
Name: Anthony G. Parrizzi
Title: Managing Member

of any conflict between the Operating Agreement and this Subscription Agreement, the Operating Agreement will prevail.

*[Balance of page intentionally left blank; signature page follows.]*